UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DUPREE PRODUCTIONS, LLC, | |
| Plaintiff, | No. 21 C 01548 |
| v. | Judge Thomas M. Durkin |
| RDE INC., formerly known as UBID HOLDINGS, INC., and KETAN THAKKER, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

This matter concerns a final arbitration award entered on February 3, 2021 in favor of Plaintiff DuPree Productions, LLC and against Defendants RDE, Inc. (referred to herein by its predecessor's name, "uBid") and Ketan Thakker (then-CEO of uBid). Plaintiff seeks confirmation of that award, while Defendants seek an order vacating or modifying it. For the reasons discussed below, the Court grants DuPree's petition, denies Defendant's counter-petition, and confirms the arbitration award.

**Background**

I. Underlying Dispute

DuPree Productions, through its owner Donald DuPree, produced a TV show called "A Piece of the Game." In 2016, DuPree entered into a "Partial Equity Payment Agreement" (the "Agreement") with uBid in connection with an advertising buy on DuPree's show. It is undisputed that rather than a cash payment, DuPree agreed to accept an equity stake in uBid in exchange for running uBid's advertising, and that uBid's ads aired during 13 episodes of the show. It also appears undisputed that at

1

the time of the Agreement, the uBid shares at issue had an approximate face value of $60,000.

According to DuPree, the value of the ad buy for the 13 shows was $195,000 ($15,000 per episode). DuPree claimed Defendants misrepresented at the time of the Agreement that uBid had a company valuation of $18,150,000 and that the shares "would be exponentially increasing in value due to an imminent public offering of uBid stock." R. 12 ¶ 10. DuPree further alleged that it never actually received any uBid stock and that uBid's claims and documentation purporting to show a stock transfer were false.

Defendants claimed that uBid only agreed to pay for advertising on four shows at a rate of $15,000 per show, for a total of $60,000. R. 11 ¶ 10. They alleged that DuPree ran uBid's ads on 13 shows, without uBid's solicitation and in excess of the Agreement, "presumably because [DuPree] had no other takers for the ad time." R. 11 ¶ 10. Defendants also disputed DuPree's contention that it never received any uBid stock, asserting that "on or about December 27, 2016, 24,670 shares of uBid were registered in its corporate records as having been issued to DuPree Productions." R. 11 ¶ 13.

II. Arbitration Proceedings

This case turns on the Arbitrator's management of the arbitration proceedings, so the Court recounts them in detail. On January 29, 2020, DuPree commenced an arbitration proceeding before the American Arbitration Association in Chicago, asserting a claim for breach of contract and misrepresentation under the Agreement. As part of the proceedings, each party was permitted to serve 12 written requests for

production of documents. DuPree sought documents relating to the value of uBid at the time of the Agreement and the shares purportedly transferred to DuPree.

On April 14, 2020, the Arbitrator ordered Defendants to respond to DuPree's written discovery by May 22, 2020. Defendants provided their responses on May 26, 2020, and DuPree sent a letter three days later identifying deficiencies in those responses. Defendants provided amended responses, and DuPree sent another letter identifying additional deficiencies. Eventually, DuPree filed a motion to compel the production of certain documents. Defendants filed a response in which they argued they should be allowed to present a dispositive motion rather than respond to the production requests. Defendants also objected, either in that response or separately, that at least some of DuPree's requests were outside the scope of relevant disclosure or precluded by the unambiguous Agreement between the parties.

On June 12, 2020, the Arbitrator granted DuPree's motion to compel and ordered Defendants to serve new written responses and produce all responsive documents on or before July 7, 2020. It also ordered Defendants to provide a sworn statement once production of all responsive documents was complete. Finally, it permitted either side to seek leave to file a dispositive motion on or before August 17, 2020. R. 12 Ex. 5.

Defendants produced additional documents on July 8, 2020. Their response did not include a sworn statement that all responsive documents had been produced. DuPree concluded that the production remained deficient and filed a motion for sanctions on July 22, 2020, in which it argued that Defendants had failed to comply

with required disclosures and sought to preclude Defendants from offering evidence to refute DuPree's allegations in the arbitration. Defendants submitted a response on August 25.

On September 9, after additional document productions apparently failed to cure the deficiencies, the Arbitrator ordered the parties to meet and confer and provide a joint status report. On September 24, following submission of the status report, the Arbitrator ordered Defendants to produce or identify several categories of documents, including

> all audited financial statements and schedules thereto for uBid for the years 2015 and 2016; all appraisals or business valuations for uBid for the years 2015 and 2016; all balance sheets for uBid for the years 2015 and 2016; all bank statements for uBid for the years 2015 and 2016; all profit and loss statements for uBid for the years 2015 and 2016; all tax returns for uBid for 2015 and 2016; and the articles of dissolution for uBid.

R. 12 ¶ 26. The Arbitrator also ordered Thakker to provide an affidavit confirming that the production was "accurate and complete." R. 12 ¶ 26. Defendants thereafter made an additional document production but once again did not include an affidavit from Thakker stating that production was "complete and accurate."

On October 15, 2020, the Arbitrator issued an order in which it identified deficiencies remaining in Defendants' production relative to the September 24 order. Specifically, the Arbitrator identified several categories of documents that had not been produced, including "all bank statements for the years 2015 and 2016, profit and loss statements for 2015 and 2016, auditor's reports for 2015 and 2016, and tax returns for 2015 and 2016." R. 12 Ex. 7. The Arbitrator further admonished Defendants' repeated failure to comply with discovery obligations:

4

> Respondents have been given multiple opportunities to produce the requested documents, but they have failed to produce them and have failed to comply with several of the arbitrator's orders. Respondents' willful non-compliance with discovery orders goes to the heart of Claimant's claims of misrepresentation by Respondent Ketan Thacker [sic] and Respondent uBid Holdings Inc.[1]

R. 12 Ex. 7.

The Arbitrator ordered Defendants to cure the deficiencies by October 30, 2020. In the event Defendants failed to do so, DuPree would have until November 16, 2020 to submit affidavits or other evidence as proof of its allegations, as well as affidavits as to the amount of attorney's fees it had incurred up to that date. Defendants would then have until December 4, 2020 to "present, in writing, any evidence or legal arguments to show cause why an award should not be entered in favor of Claimant as a sanction for Respondents' willful non-compliance with discovery orders." R. 12 Ex. 7. Both parties submitted affidavit evidence in connection with this order, but "no live testimony ever was taken from any witness in the arbitration." R. 11 ¶ 28.

The Arbitrator subsequently reviewed Defendants' submissions, which included affidavits from Thakker, and found that they had not "cured or justified the basic defects in their production of requested documents which would likely prove or refute Claimant's claim of misrepresentations about the financial status of uBid." By order on December 16, 2020, the Arbitrator found that DuPree had submitted

---

[1] As identified in the arbitration record, "Claimant" refers to DuPree, while "Respondents" refers to uBid and Thakker.

5

sufficient evidence to prove its claim but permitted Defendants to provide additional information on or before January 4, 2021. R. 11 Ex. A.

On February 3, the Arbitrator entered a final order granting DuPree's motion for sanctions and its petition for an adverse inference and entry of judgment pursuant to AAA Rule 58. DuPree was awarded $195,000 in damages plus attorney's fees and costs, for a final award amount of $223,314.59. The final award was based on "all of the documents submitted." R. 11 Ex. A.

## Legal Standard

Defendants challenge the Arbitrator's award under two provisions of the FAA.[2] The first governs petitions to vacate an arbitration award and provides, in relevant part:

> (a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
>
> . . .
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear

---

[2] DuPree originally filed its petition to confirm the arbitration award in Illinois state court pursuant to the Illinois Uniform Arbitration Act, 710 ILCS 5/1 *et seq.*, and Defendants removed the case to this Court. Removal was procedurally improper. Federal jurisdiction was premised on diversity under 28 U.S.C. § 1332. The "home state defendant rule" of 28 U.S.C. § 1441(b)(2) precludes removal in diversity cases if one of the defendants is a citizen of the state in which the action is brought. Here, defendant Thakker is a citizen of Illinois, and therefore removal was technically not allowed. However, the Seventh Circuit has held that this rule is a "matter of removal procedure, and hence waivable" if removal is not challenged within the 30 days afforded by § 1447(c). *Hurley v. Motor Coach Indus., Inc.*, 222 F. 3d 377, 380 (7th Cir. 2000). Whether Plaintiff didn't realize or didn't care, that time has elapsed, and because there is no dispute that diversity jurisdiction is otherwise satisfied for both the UAA and FAA petitions, the improper removal is no obstacle to resolution.

6

> evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10. The other governs the modification of arbitration awards and provides, in relevant part:

> In either of the following cases the United States court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration—
>
> (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

*Id.* § 11.

The Seventh Circuit has described the scope of judicial review under the FAA as "exceedingly narrow." *Cont'l Cas. Co. v. Certain Underwriters at Lloyds of London*, 10 F.4th 814, 816 (7th Cir. 2021). Apart from the grounds set out in the FAA (or state analogues), "arbitration awards are largely immune from such scrutiny in court." *Id.* "Factual or legal error, no matter how gross, is insufficient to support overturning an arbitration award." *Halim v. Great Gatsby's Auction Gallery, Inc.*, 517 F.3d 557, 563 (7th Cir. 2008). In this manner, the FAA reflects a "national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006).

7

**Analysis**

I.    <u>Counter-Petition to Vacate Arbitration Award</u>

In their counter-petition, Defendants argue that the arbitration award should be vacated because the Arbitrator "refused to hear evidence pertinent and material to the controversy" and "exceeded her powers." Defendants base their claim on the Arbitrator's "complete denial to [Defendants] of the opportunity to present testimony and documentary evidence." R. 11 ¶ 6. Far from denying Defendants such an opportunity, it appears the Arbitrator gave them multiple opportunities to do so despite their obstructionism during discovery.

By their own admission, Defendants did not fully comply with their discovery obligations or the Arbitrator's orders. Their counter-petition states, "Nevertheless, while it had taken longer than would have been desirable, uBid ultimately produced *the overwhelming majority of the documents* the Arbitrator had directed it to produce despite Counter-Plaintiffs' early and consistent opposition to this as a 'red herring' issue." R. 11 ¶ 35 (emphasis added). The emphasized portion is simply a dressed-up way of saying "less than everything." Defendants themselves admit that they did not produce all bank records for 2015 and 2016 as ordered, R. 11 ¶ 39, and their disagreement with the Arbitrator's October 15, 2020 order appears similarly piecemeal, *see* R. 11 ¶ 37.

It is of no moment that Defendants otherwise produced thousands of pages of documents, roughly four times as many as DuPree. As any experienced attorney knows, discovery is a quintessential needle-in-a-haystack exercise. Document productions numbering in the thousands of pages routinely contain little relevant

information, and even the most complicated cases can turn on a handful of documents. *See, e.g.*, *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 351, 363-64 (N.D. Ill. 2005). Defendants' refusal to turn over multiple discrete categories of documents that went "to the heart of Claimant's claims of misrepresentation" necessitated multiple status conferences, a motion to compel that was decided against them, and at least two other orders commanding them to produce documents.

The Arbitrator plainly gave careful consideration to the scope of her authority in imposing the sanctions at issue. As she noted in the February 3, 2021 order, the documents Defendants refused to produce "would likely prove or refute Claimant's claims of misrepresentations about the financial status of uBid." AAA Rule 23(d) explicitly contemplates drawing adverse inferences and excluding evidence as sanctions for willful noncompliance with an Arbitrator's orders. Here, it appears that after Defendants repeatedly defied her orders, the Arbitrator appropriately inferred that the withheld material supported Plaintiff's claim and barred Defendants from presenting other evidence. The final February 3 order tracks AAA Rule 58 and states that Defendants were given written explanations of their deficiencies and "ample opportunity to comply with Claimant's production requests and the Arbitrator's orders." R. 11 Ex. A. The record confirms this finding. Contrary to their arguments here, Defendants had multiple windows to present evidence even after the Arbitrator imposed sanctions, including an opportunity to respond directly to Plaintiff's expert affidavit as to the value of uBid's shares.

9

This Court's review of the Arbitrator's decision is tightly constrained. Vacating the award is warranted only if the Arbitrator was "guilty of misconduct" or "exceeded [her] powers." 9 U.S.C. § 10(a)(3), (4). Neither occurred here.[3] Accordingly, Defendants' counter-petition to vacate the arbitration award is denied.

II.     Counter-Petition to Modify Arbitration Award

In the alternative to vacating the award, Defendants seek an order modifying the amount of the award to $60,000, less the value of the uBid shares DuPree received. Defendants argue that modification is warranted because there was "evident material miscalculation of figures." R. 11 ¶ 6; 9 U.S.C. § 11(a). Defendants have not explained where this miscalculation occurred, but presumably their theory is the Arbitrator improperly calculated damages as the value of a 13-episode ad buy (13 x $15,000 = $195,000) rather than a 4-episode buy (4 x $15,000 = $60,000).

This is not a miscalculation of the sort contemplated by § 11(a). Courts will modify an arbitration award in limited circumstances, such as when an arbitrator unambiguously and mistakenly permits double recovery, *see Eljer Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1254 (7th Cir. 1994), or omits a damages measure unambiguously meant for inclusion, *see Volk v. X-Rite, Inc.*, 599 F. Supp. 2d 1118, 1133 (S.D. Iowa 2009). In contrast, the question of whether uBid had agreed to buy 13 or 4 episodes-worth of advertising was a central disputed issue in the Arbitration. The Arbitrator's finding on this issue is explained in her final order: "Claimant's

---

[3] Defendants do not invoke the other grounds listed in § 10(a)(1) or (2), and the Court finds no indication that either would apply here.

submissions show that Claimant and Respondents entered into an agreement in mid-2016 whereby Claimant would provide advertising and endorsement space to Respondents during thirteen episodes of the Emmy Award winning show produced by the Claimant called 'A Piece of the Game' in exchange for Respondents paying Claimant a total of $195,000." R. 11 Ex. A. To the extent Defendants are implying that the Arbitrator permitted double recovery over uBid shares previously transferred to DuPree, receipt of those shares was similarly disputed, and the Arbitrator's finding on this question is outside the scope of this Court's review. *See Eljer Mfg., Inc.*, 14 F.3d at 1255-56 ("Our scope of review does not permit us to disturb the arbitrator's findings as to the relative credibilities of each side's evidence.").

Here, the Arbitrator did not "miscalculate" anything—she found in favor of Plaintiff on the key disputed issues. As such, there is no basis to modify the award, and Defendants' counter-petition must be denied.

## Conclusion

For the foregoing reasons, Defendants' counter-petition to vacate or modify the arbitration award entered on February 3, 2021 is denied. Plaintiff's petition is granted and the arbitration award is confirmed. Each party shall bear its own costs for this action.

ENTERED:

*Thomas M Durkin*
_____

Honorable Thomas M. Durkin
United States District Judge

Dated: November 30, 2021

11